FILED

2013 Oct-30  PM 04:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | | |
|---|---|---|
| **STEPHEN RICHARD NIX,** | ) | |
| | ) | |
| **Claimant** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.: 6:11-CV-04327-KOB** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of** | ) | |
| **Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

## I. INTRODUCTION

On April 9, 2009, the claimant, Stephen Richard Nix, applied for disability insurance benefits under Title II of the Social Security Act. The claimant alleges disability commencing on March 4, 2009 because of injuries from a scaffolding accident. The Commissioner denied the claim both initially and on reconsideration. (R. 11, 14). The claimant filed a timely request for a hearing before an Administrative Law Judge, and an ALJ, Jerome L. Munford, held a hearing on February 16, 2011. (R. 37). In a decision dated June 20, 2011, the ALJ found that the claimant was not disabled as defined by the Social Security Act and, thus, was ineligible for disability insurance benefits. (R. 20). On October 21, 2011, the Appeals Council denied the claimant's request for review; consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration. (R. 1-3). The claimant has exhausted his administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons stated below, this court AFFIRMS the decision of the Commissioner.

## II. ISSUE PRESENTED

The claimant presents the following issue for review: whether the ALJ properly weighed the opinions of the claimant's treating physicians.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited.  This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if the factual conclusions are supported by substantial evidence.  *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

 "No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999.  This court does not review the Commissioner's factual determinations *de novo.* The court will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings."  *Walker*, 826 F.2d at 999. A reviewing court may not look only to those parts of the record that support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

## IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To make this determination, the Commissioner employs a five step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920.

When evaluation different medical opinions, the ALJ should "state with particularity the weight he gave the different medical opinions and the reasons therefor." *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).

The Commissioner normally must give substantial weight to the opinions of a treating physician. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1998). To discount the opinion of a treating physician, the Commissioner must provide good cause. *Id.* Good cause exists if the

physician's opinion is not supported by evidence; the evidence supports a contrary finding; the physician's opinion is conclusory; or the physician's opinion is inconsistent with the doctor's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240–41 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)); 20 C.F.R. § 404.1527.

## V. FACTS

The claimant is a high school graduate and was forty-three years old at the time of the administrative hearing. He has past work experience as a construction worker. (R. 44). The claimant originally alleged disability from a broken right ankle. (R. 207). Later medical records indicate the claimant also suffered from degenerative disc disease. (R. 14). These injuries stem from an on-the-job construction accident. (R. 48).

### *Physical Limitations*

On March 4, 2009, the claimant was injured when a scaffold turned over and fell on him. Reports from the hospital indicated a distal tibia and fibula fracture. (R. 307-09). Dr. David B. Griffin performed an open reduction internal fixation of the distal fibula with application of a spanning external fixator to the right distal tibia. On March 23, 2009, Dr. Griffin removed the external fixator from the right distal tibia and performed an open reduction internal fixation of the distal tibia. (R. 316-19). In all, the claimant had about thirty screws and two plates put in his ankle. (R. 50). On August 13, 2009, Dr. Griffin opined that the claimant could work at a sedentary job level. He further stated that the claimant "hopefully may be able to return to his prior work activities." (R. 321).

On January 18, 2010 in a follow-up, Dr. Griffin reported that the claimant's ankle fracture was "apparently" healed; that the hardware remained functioning and intact; and that there was no evidence of migration or loss of fixation. Overall, Dr. Griffin concluded that the

claimant's condition was "congruent with very minimal residual posttraumatic degenerative changes." Dr. Griffin also stated that the claimant could continue working at a sedentary level. On March 22, 2010, Dr. Griffin reported that the claimant had continued pain and he was unsure about removing the ankle's hardware. Dr. Griffin stated that he still believed removal would help with the claimant's symptoms and decided that the claimant should proceed with a functional exam. (R. 229-30).

An April 9, 2010 Functional Capacity Evaluation of the claimant indicated he was capable of medium level work. It further estimated that, using the *AMA Guides to the Evaluation of Permanent Impairment*, the claimant had only a seven percent whole-person impairment. (R. 453-54). On May 3, 2010, Dr. Griffin agreed with this assessment and stated he would release him to full activity as outlined by the functional capacity exam. (R. 345). However, on November 4, 2010 in a sworn statement, Dr. Griffin stated this rating did not include the claimant's back condition. (R. 339). He also stated that the claimant's limp may exasperate his back condition but he would defer to Dr. Prevost's opinion as to the back condition's effect on the claimant. (R. 340-41).

On September 4, 2009, Dr. Mark A. Prevost began treating the claimant for his back pain. Dr. Prevost stated that the claimant had been complaining about his back pain since his accident. Dr. Prevost noted mild degenerative changes and some loss of disc space height from the claimant's lumbar spine x-rays. He also reported that the claimant rated his back pain anywhere from a three to a nine on a one-to-ten scale. (R 235).

On September 21, 2009, the claimant returned to Dr. Prevost after an MRI of the lumbar spine. Dr. Prevost noted that the MRI indicated a central disc herniation, disc protrusion on the left side, and an extended fragment on the right side that could possibly give the claimant

radicular symptoms.  Because the claimant reported significant improvement, Dr. Prevost only discussed the possibility of epidural steroid injections, returned the claimant to "full duty" and recommended no additional treatment.  However, on September 29, 2009, the claimant called to report pain on his left side and to request the injections.  (R. 234, 244).  On October 8, 2009, Dr. Prevost referred the claimant to Dr. Kevin Greene for the lumbar epidural steroid injections.  (R. 294).  On November 6, 2009, Dr. Prevost noted that the injections did not "really help much" but still continued the claimant on "full duty."  (R. 387).

On November 17, 2010, Dr. Prevost scheduled another MRI scan of the lumbar spine because of "worsening radicular symptoms."  On November 24, 2010, Dr. Prevost compared the second MRI scan to the previous, September 2009 scan.  He reported "significant worsening lumbar spondylosis" and minimal changes in the level of stenosis.  He opined that the claimant's worsening condition would make him a candidate for disability.  (R. 390-91).  Dr. Mark Roberts, a radiologist, also compared the claimant's September 2009 exam with the November 2010 exam.  Dr. Roberts, however, reported "no change" between the two MRI scans.  (R. 447-48).

On January 28, 2011, Dr. Prevost was deposed in connection with the claimant's worker's compensation claim.  Dr. Prevost testified that he believed the claimant experienced chronic pain.  (R. 369).  He testified that the pain in his back and ankle would likely prevent him from "find[ing] any kind of gainful employment."  (R. 374).  However, he stated that the claimant might be able to perform a "desk job."  (R. 376).  He also reiterated his opinion that the November 2010 MRI appeared significantly worse than the September 2009 MRI.  (R. 372).

On September 3, 2009, Dr. Anthony C. Pitts conducted a Physical Residual Functional Capacity Assessment and determined that the claimant could occasionally lift fifty pounds;

frequently lift twenty-five pounds; stand and/or walk for six hours in an eight hour work day; and sit for six hours in an eight hour work day.  (R. 322-23).

*The ALJ Hearing*

After the Commissioner denied the claimant's request for disability insurance benefits, the claimant requested and received a hearing before an ALJ.  (R. 7, 39).  At the hearing, the claimant testified that pain in his lower back and right leg was a seven out of ten.  He stated this was the average level of pain but that sometimes his back became so painful he could not even stand up.  He further testified that the pain prevented him from sitting or standing for long periods of time; made it difficult to walk for any significant distance; and caused him to walk with a limp.  (R. 53-55).

The claimant testified that on a typical morning it would take about two hours to work the stiffness out of his ankle. He also stated that because of the pain he would lie down for a total of three hours on an average day.  (R. 57-58).  He testified that on a typical day he would play the guitar for three hours after the kids went to school.  Sometimes, he stated, he would go to the store for refreshments.  (R. 70).

A vocational expert, Mr. Dan Kinard, then testified as to the type and availability of jobs that the claimant could perform.  The ALJ asked Mr. Kinard about a hypothetical individual who was restricted to occasional bending and stooping; no right lower extremity pushing or pulling; even surfaces and terrains; and a temperature controlled environment.  He further stated that this individual should be permitted to sit and/or stand.  (R. 76).  Mr. Kinard stated that such an individual would not be able to work as a construction worker, the claimant's past relevant work experience.  (R. 79).  But Mr. Kinard testified that such an individual could perform sedentary work.  He cited small parts inspector, semi-conductor bonder, and optical goods polisher as jobs

that the claimant could perform and that exist in significant number in the national economy.  (R. 78).

The ALJ next asked Mr. Kinard about the limitations pain would impose on such an individual.  Mr. Kinard first described his "pain scale" as one to three indicating mild pain, four to six indicating moderate pain, seven to nine indicating moderately severe pain, and ten indicating severe pain.  Mr. Kinard then opined that if the ALJ determined the claimant experienced moderately severe pain he would be incapable of working.  Moderate pain, however, "would not preclude employment necessarily."  (R. 79).

*The ALJ's Decision*

On June 20, 2011, the ALJ issued a decision finding the claimant was not disabled under the Social Security Act.  (R. 20).  First, the ALJ found that the claimant met the insured status requirements of the Act.  Next, he found that the claimant had not engaged in gainful activity since the alleged onset of his disability.  The ALJ determined that the claimant's degenerative disc disease and right distal tibia fracture qualified as severe impairments; however, he concluded that these impairments did not singly or in combination manifest the specific signs and diagnostic findings required by the Listing of Impairments.  (R. 14).

The ALJ then determined that the claimant had the residual functional capacity ("RFC") to perform sedentary work with some extra restrictions.  He stated that the claimant would need a temperature controlled environment with even surfaces and a sit or stand option.  (R. 14).  In making this RFC finding, the ALJ considered the claimant's alleged symptoms but determined that his objectively determinable medical condition could not reasonably be expected to produce such symptoms.  (R. 17).

The ALJ noted that he afforded significant weight to the opinion of Dr. Griffin as "his opinion offer[ed] a complete longitudinal view of the claimant's condition and abilities." He attributed minimal weight to the opinion of Dr. Pitts. The ALJ reasoned that Dr. Pitts was a non-examining physician and based his opinion on an incomplete medical record. The ALJ also afforded minimal weight to the opinion of treating physician Dr. Prevost. He determined that Dr. Prevost's opinion was internally inconsistent and inconsistent with the objective medical record. (R. 18).

Based on these findings and the testimony of vocational expert Mr. Kinard, the ALJ determined that the claimant could not perform any of his past relevant work. He then considered the claimant's age, education, work experience, and RFC and determined that the claimant could perform sedentary level jobs that exist in significant numbers in the national economy. The ALJ relied on Mr. Kinard's testimony that the claimant could work as a small parts inspector, semi-conductor bonder, or optical polisher. Thus, the ALJ concluded that the claimant retained the capacity for work and is not disabled under the Social Security Act. (R. 18-19).

## VI. DISCUSSION

The claimant argues that the ALJ did not properly weigh the opinions of Drs. Griffin and Prevost. To the contrary, this court finds that the ALJ properly weighed those opinions and substantial evidence supports his decision.

The ALJ must specifically state the weight given to different medical opinions. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). In assigning weight, "the testimony of a treating physician must be given substantial or considerable weight unless good cause is shown to the contrary." *Crawford v.*

*Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).

*Dr. Griffin*

The claimant argues that the ALJ implicitly and improperly rejected portions of Dr. Griffin's testimony.   Specifically, the claimant contends that the ALJ never addressed Dr. Griffin's sworn statement "categoriz[ing] the [claimant's] pain as moderate to severe and chronic in nature" and, thus, rejected it.  (Pl.'s Mem. 13).  This argument lacks merit.

In *Winschel*, the Eleventh Circuit stated:

> [T]he ALJ did not discuss pertinent elements of the examining physician's medical opinion, and the ALJ's conclusions suggest that those elements were not considered. It is possible that the ALJ considered and rejected [the] medical opinion[], but without clearly articulated grounds for such a rejection, *we cannot determine whether the ALJ's conclusions were rational and supported by substantial evidence.* Accordingly, we reverse.

631 F.3d at 1179 (emphasis added).  However, the Eleventh Circuit has also found that harmless errors regarding the consideration given to a physician's opinion do not mandate a reversal.  *See Shaw v. Astrue*, 392 Fed. App'x 684, 687 (11th Cir. 2010) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)).  The court stated that "even if the ALJ erred in failing to mention every finding made by Dr. Muller, any such error was harmless."  *Id.*

Dr. Griffin's statement regarding the claimant's pain does not contradict the ALJ's findings.  In Dr. Griffin's sworn statement, Dr. Griffin was asked whether the claimant's pain was "at a moderately severe to severe level." Dr. Griffin responded, "I would say it's *moderate to severe.*"  (R. 340).  At the hearing, Mr. Kinard testified that "*moderately severe pain* … would preclude gainful activity."  (R. 79).  While this evidence could rationally be construed to be favorable to the claimant, it does not directly contradict the ALJ's assessment.  Dr. Griffin specifically rephrased the question to make it apparent that he believed the claimant suffered

"*moderate* to severe pain" not "*moderately severe* to severe pain."  He took special care *not* to opine that the claimant suffered moderately severe pain.  This statement then does not contradict the finding that the claimant, in fact, does not suffer moderately severe pain.

Furthermore, the whole of Dr. Griffin's opinion supports the ALJ's decision.  For example, Dr. Griffin stated that the claimant could work at the sedentary level while he was "unable to tolerate standing or walking for any prolonged period of time."  (R. 229).  This statement indicates that, at a minimum, he believed the patient could perform at the sedentary level with his ankle pain.  Dr. Griffin also released the claimant to perform medium work only six months before he gave the sworn statement.  The ALJ specifically referenced these statements in his decision.  (R. 16-17).  The ALJ's discussion of Dr. Griffin's opinion and specific statement according it significant weight were sufficient for the court to determine that substantial evidence supports the Commissioner's decision.

The ALJ provided an adequate discussion of Dr. Griffin's opinion, and the omitted statements do not contradict his conclusion.  Because of this finding, substantial evidence supports the Commissioner's decision, and any error in the consideration of Dr. Griffin's statements was harmless.  *See Shaw*, 392 Fed. App'x at 687.

### Dr. Prevost

The claimant argues that the ALJ improperly rejected Dr. Prevost's opinion that the claimant was in chronic pain and could not find gainful employment.[1]  The court finds that substantial evidence supports the ALJ's decision to discredit Dr. Prevost's opinion.

---

[1] The court notes that Dr. Prevost's assertions that the claimant is disabled and unable to find work would not be binding on the ALJ, even if he had not discredited the testimony.  *See Wilcox v. Comm'r, Soc. Sec. Admin.*, 442 Fed. App'x 438, 440 (11th Cir. 2011) ("[T]he ultimate issue of disability is left to the determination of the Commissioner, and, thus, a statement by a medical source that a claimant is 'disabled' or 'unable to work' is not binding on the ALJ."); *see also* 20 C.F.R. § 404.1527 (d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").

The ALJ has good cause for rejecting a treating physician's opinion when "the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).

In affording Dr. Prevost's opinion minimal weight, the ALJ stated that his opinion conflicted with the overall medical record and his own treatment records.  The ALJ cited Dr. Prevost's conflicting reports as to what activities the claimant could perform and Dr. Roberts' interpretation of the claimant's November 2010 MRI.  The ALJ noted that Dr. Prevost opined that the claimant was permanently and totally disabled but, in the same deposition, also stated he could work a desk job.  (R. 18).  Other internal inconsistencies in Dr. Prevost's records could be explained by his opinion that the November 2010 MRI demonstrated the claimant's condition had significantly worsened.  (R. 390-91).  However, Dr. Roberts reported that the November 2010 MRI revealed "no change" in the claimant's condition.  (R. 448).  The ALJ found that this discrepancy between Dr. Prevost's and Dr. Roberts' interpretations of the MRI discredited Dr. Prevost's opinion based on it.  (R. 18).  The internal inconsistencies and contrary evidence in the record provided good cause for the ALJ to discredit Dr. Prevost's opinion.  Thus, the court finds substantial evidence supports the ALJ's credibility determination.

## VII. CONCLUSION

For the reasons stated above, this court concludes that the decision of the Commissioner is supported by substantial evidence and is to AFFIRMED.  The court will enter a separate order to that effect simultaneously.

DONE and ORDERED this 30th day of October, 2013.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE